

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

TROY WILLMON,                           §
                                        §
        Plaintiff,                      §        No. 3:05-CV-1391-M
                                        §
v.                                      §
                                        §
ROBERT DANIEL, RICKY WILSON, and        §
CITY OF WAXAHACHIE, TEXAS,              §
                                        §
        Defendants.                     §

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion for Summary Judgment, filed February 3, 2006.

The Motion is **GRANTED IN PART**.


## FACTUAL BACKGROUND

Plaintiff Troy Willmon is a licensed law enforcement officer who works for Ellis County.

On November 22, 2003, Candace Harbin, Willmon's wife, called 911 regarding an altercation

between her and Willmon. Sergeant Ricky Wilson and Officer Robert Daniel, employed by the

City of Waxahachie ("the City"), responded to the call. Wilson interviewed Harbin, and learned

that Willmon and Harbin had had an argument, and that Willmon had grabbed Harbin's wrists.[1]

Wilson observed scratches on Harbin's arm. Harbin also told Wilson that she wished Willmon to

leave the premises.

Daniel and Wilson arrested Willmon and filed charges for "Assault by Contact - Family

---

[1]Defendants also state in their brief that Harbin alleged that Willmon started twisting her
arms and "bent [her] over, causing her back pain". Defs. Br. at 12.

Violence". Daniel took Willmon to the City jail. Willmon was later transferred to the Ellis County jail. The next day, Municipal Judge Sylvia Lopez-Beaver met with Willmon at the jail and issued an Emergency Protective Order ("EPO"). The EPO, effective for thirty-one days, prohibited Willmon from "going to or within 150' of the residence of the victim . . . and the place of the employment of the victim". Def. App. 16-17. Later that day, Plaintiff was released from jail. Willmon states that the prosecutor ultimately decided not to press charges against him.

On July 13, 2005, Plaintiff filed this lawsuit, asserting (1) a claim under 42 U.S.C. § 1983 against Wilson and Daniel, (2) a claim under 42 U.S.C. § 1983 against the City, (3) a claim of assault and battery against Wilson and Daniel, (4) a claim of false arrest and illegal imprisonment against Wilson and Daniel, and (5) a claim of illegal search/trespass and illegal eviction against Wilson and Daniel. Defendants filed their Motion for Summary Judgment on February 3, 2006.

STANDARD OF REVIEW

Summary judgment is warranted when the facts, as reflected in the pleadings, and in affidavits, and other summary judgment evidence, show that no reasonable trier of fact could find for the nonmoving party as to any material fact. *Pourgholam v. Advanced Telemktg. Corp.*, No. 3:01-CV-2764-H, 2004 U.S. Dist. LEXIS 10659, at *2-3 (N.D. Tex. June 9, 2004) (citing Fed. R. Civ. P. 56; *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986)). "The moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac*

-2-

*Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 322-25). Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).

The nonmovant is then required to go beyond the pleadings and designate specific facts that prove the existence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). That party may not rest on conclusory allegations or denials in its pleadings that are unsupported by specific facts. Fed. R. Civ. P. 56(e). The court must review all evidence in the record, giving credence to evidence favoring the nonmovant as well as "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses" and disregarding the evidence favorable to the nonmovant that the jury is not required to believe. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 152 (2000). Further, "the court must draw all justifiable inferences in favor of the nonmovant." *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 338 (5th Cir. 2005).

In determining whether genuine issues of material fact exist, "factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that a controversy exists." *Lynch Props.*, 140 F.3d at 625. "If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Friou v. Phillips Petroleum Co.*, 948 F.2d 972, 974 (5th Cir. 1991). However, in the absence of proof, a court will not conclude that the nonmoving party could prove the required facts. *Lynch Props.*, 140 F.3d at 625.

ANALYSIS

I. § 1983 Claim Against Daniel and Wilson

A private right of action may be asserted against police officers who violate federal

constitutional or statutory rights while acting under color of state law. 42 U.S.C. § 1983. Here,

Plaintiff alleges that Daniel's and Wilson's actions deprived him of the following rights: (1)

freedom from unreasonable seizure of his person; (2) freedom from eviction from his home,

without notice, hearing or legal cause; (3) freedom from a forced separation from his wife

without legal cause or justification; and (4) freedom to act as a Texas Peace Officer while facing

the allegedly unwarranted charges. Daniel and Wilson move for summary judgment on this

claim, arguing that they are entitled to qualified immunity.

An analysis of the qualified immunity defense requires a two-step approach. First, the

threshold question is "whether the facts alleged, taken in the light most favorable to the party

asserting the injury, show that the officer's conduct violated a constitutional right." *Keenan v.*

*Tejeda*, 290 F.3d 252, 261 (5th Cir. 2002) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). If

the allegations could make out a constitutional violation, the second question is whether it would

have been "clear to a reasonable officer that his conduct was unlawful in the situation

confronted." *Id.* Thus, an official is entitled to the defense of qualified immunity "insofar as [his]

conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would be aware." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

The Supreme Court in *Saucier v. Katz* explained that courts must consider the

requirements of qualified immunity in the proper sequence. *See* 533 U.S. at 201 (2001). The

court must determine at the outset whether the factual allegations, viewed in the light most

-4-

favorable to the Plaintiff, reveal a constitutional violation. *Id.* If the facts alleged do not reveal such a violation, there is no need for the court to proceed to the second step in the qualified immunity analysis. *Id.*

### a. False Arrest Claim

The right to be free from illegal arrest is a clearly established constitutional right. *Sorenson v. Ferrie*, 134 F.3d 325, 328 (5th Cir. 1998) (citing *Eugene v. Alief Indep. Sch. Dist.*, 165 F.3d 1299, 1305 (5th Cir. 1995); *Duckett v. City of Cedar Park*, 950 F.2d 272, 278 (5th Cir. 1992)). Whether an arrest is illegal hinges on the absence of probable cause. *Id.* "Thus, if [Plaintiff] cannot show that the officers lacked probable cause, [he] has failed to state the violation of a constitutional right, and the officers are entitled to qualified immunity." *Id.*

"Probable cause depends on whether the officers possessed knowledge that would warrant a prudent person's belief that the suspect had already committed or was committing a crime." *Id.* "Thus, the central question in our qualified immunity inquiry is the objective (albeit fact-specific) question whether a reasonable officer could have believed the arrest to be lawful, in light of clearly established law and the information the arresting officers possessed." *Id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)).

Under Texas law, a police officer may arrest, without a warrant, "persons who the peace officer has probable cause to believe have committed an offense involving family violence."[2]

---

[2]In his brief, Plaintiff states that "Texas Code of Criminal Procedure § 14.03 does not permit an officer to make a warrantless arrest for "assault by contact" unless the officer observed the "offensive contact". Pl. Br. at 11. The Court finds that § 14.03 establishes no such requirement, and Texas case law does not support it. *See Randolph v. Texas*, 152 S.W.3d 764, 774 (Tex. App. – Dallas 2004, no pet.) ("To have probable cause to believe that an offense had

Tex. Code Crim. Proc. Ann. art. 14.03 (Vernon 2005);[3] *cf. Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001) (citing Tex. Code Crim. Proc. Ann. art. 14.03(a)(4) (Vernon 1999)).[4]

Daniel and Wilson argue that they had probable cause to arrest Willmon. Through their depositions, Daniel and Wilson established that, at the time of the arrest, they knew that (1) Harbin had called 911, (2) Harbin had visible physical injuries, (3) Harbin said that Willmon had grabbed her,[5] and (4) Harbin said that she wanted Willmon to leave the premises. In their depositions, Harbin and Willmon dispute the extent of Harbin's physical injuries, but otherwise do not dispute these facts. Even with Harbin and William's disagreement on the injury issue, the undisputed facts are sufficient for an officer to reasonably form a belief that probable cause existed under Texas law to arrest Willmon.[6] Grabbing, by itself, plainly satisfies the standard for assault. *See Glenn*, 242 F.3d at 307; *Irving v. State*, 176 S.W.3d 842, 845 n.6 (Tex. Crim. App. 2005) (defining assault as when a person "intentionally or knowingly causes physical contact

been committed, [the police officer] did not need first-hand knowledge of appellant's alleged assault of his wife.")

[3]One Texas court noted that "[t]his provision appears to be aimed at domestic violence situations, where an immediate arrest would be valuable in defusing the situation." *Randolph*, 152 S.W.3d at 773.

[4]The 1999 version of this statute relied on by the *Glenn* court stated that a police officer may arrest, without a warrant, "persons who the peace officer has probable cause to believe have committed an assault resulting in bodily injury to a member of the person's family or household."

[5]It is reasonable under Texas law for officers to presume that the statements of a person claiming to be a victim of a crime are reliable as long as they remain alert to other circumstances at the scene. *See Randolph*, 152 S.W.3d at 774 (citing *Mungia v. State*, 911 S.W.2d 164, 167 (Tex. App. – Corpus Christi 1995, n.p.h.)).

[6]Plaintiff responds that (1) neither Harbin nor Plaintiff told the police that Plaintiff had caused Harbin to suffer any sort of injury, and (2) the police did not observe the Plaintiff commit an assault. Assuming these contentions to be true, they do not change the Court's analysis.

with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative'" (citing Tex. Penal Code § 22.01)). This court is "not willing to second guess the officer . . . who must act on the spur of the moment if that officer's action can be classified as 'arguably reasonable.'" *Id.* Officers Daniel and Wilson exercised reasonable discretion based on their perception of the circumstances on the scene, and this Court finds that they are entitled to qualified immunity on the section 1983 claim against them premised on a wrongful arrest. *Id.*

*b. Eviction Claim and Separation Claim*

Plaintiff claims that Daniel's and Wilson's actions caused him to be evicted from his home and separated from his wife without notice, hearing or legal cause. The gravamen of this claim is that Municipal Court Judge Sylvia Lopez-Beaver ordered that the Plaintiff be kept in jail and barred from his home, without proper procedure. Even assuming that this rises to a constitutional violation, Plaintiff does not show that the actions of Officers Daniel and Wilson caused this violation. Because the facts alleged, taken in the light most favorable to Plaintiff, do not show that their conduct violated Wilmon's constitutional right, Daniel and Wilson are entitled to qualified immunity from this claim. *See Keenan*, 290 F.3d at 261.

*c. Employment Claim*

Plaintiff claims that Wilson and Daniel's actions deprived him of the freedom to act as a Texas Peace Officer while facing the allegedly unwarranted charges. In certain circumstances, the expectation of government employment is a property interest that triggers due process

-7-

protections. *See Bd. of Regents v. Roth*, 408 U.S. 564, 571 (1972); *Bishop v. Wood*, 426 U.S. 341 (1976). Even if Willmon shows a constitutional violation, to prevail on this claim, he must show that Wilson and Daniel caused this violation. *See Murray v. Earle*, 405 F.3d 278, 290 (5th Cir. 2005) ("Section 1983 does require a showing of proximate causation, which is evaluated under the common law standard."); *Coggin v. Longview Indep. Sch. Dist.*, 337 F.3d 459, 464-64 (5th Cir. 2003) (en banc).[7]

Defendants did not address this claim;[8] thus, Defendants did not shift the burden to Willmon to produce evidence to preclude summary judgment on this claim. *See Fields*, 922 F.2d at 1187; *see also Lopez v. City of Dallas*, 3:03-CV-2223-M, 2006 WL 1450520, at *12 (N.D. Tex. May 24, 2006) (Lynn, J.). The Court declines to dismiss Plaintiff's § 1983 claim against Daniel and Wilson at this time. The Court **GRANTS LEAVE** for Defendants to file a brief and submit supporting evidence addressing this claim.

## II. § 1983 Claim Against the City

Plaintiff brings a § 1983 claim against the City. "A municipality may be liable under section 1983 only if a municipal policy caused the deprivation of a right protected by the Constitution or federal laws." *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989)

---

[7]"After one has found a deprivation of a federally secured right and has determined that it resulted from state action, one must ask a third question: Who is the state actor responsible for this violation?" *Coggin*, 337 F.3d at 463-64 (citing *Bush v. Viterna*, 795 F.2d 1203, 1209 (5th Cir. 1986)).

[8]Additionally, Defendants did not address Plaintiff's claim that the City is liable for its employees' actions that deprived Willmon of the freedom to act as a Texas Peace Officer while facing the allegedly unwarranted charges. The Court **GRANTS LEAVE** for Defendants to present evidence and argument as to this claim.

(citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Plaintiff claims that the City should held liable because its employees violated his constitutional right to be free from false arrest, wrongful eviction, forced separation from his wife, and to act as a Texas Peace Officer while facing the allegedly unwarranted charges.[9] The City argues that Plaintiff was not deprived of a constitutional right.

*a. False Arrest Claim*

In *City of Los Angeles v. Heller*, the Supreme Court held that a plaintiff cannot maintain a claim that a city is responsible for an officer's § 1983 violation if the officer inflicted no constitutional injury on the plaintiff. 475 U.S. 796 (1986). In *Heller*, the plaintiff brought a § 1983 action against the City of Los Angeles, a Los Angeles police officer, and other officials. *Id.* at 797. After concluding that the jury's verdict absolved the officer of the alleged constitutional violations, the Court noted that Supreme Court authorities do not authorize "the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm." *Id.* at 799.

If Willmon cannot establish a constitutional violation by the City's employees, the fact that the City's policy "might have *authorized* the use of constitutionally excessive force is quite beside the point." *Id.* (emphasis in original). For the reasons set out above, Plaintiff cannot establish that Daniel and Wilson deprived Willmon of his constitutional right to be free from false arrest. Thus, Plaintiff's claim that the City is liable for violating his right to be free from illegal arrest fails as a matter of law. *Accord Mata v. City of Ennis*, 3:01-CV-983-M, 2003 U.S.

---

[9]Willmon's employment claim against the City is addressed above.

-9-

Dist. LEXIS 1420, at *28-29 (N.D. Tex. Jan. 20, 2003) (Lynn, J.).

*b. Eviction Claim*

Plaintiff also claims that the City should be held liable because its employees violated his

constitutional right to be free from eviction from his home without due process.[10] Defendants

present evidence that Willmon appeared before Judge Lopez-Beaver on November 23, 2003,

after his arrest for family violence, and, at that time, Judge Lopez-Beaver entered an EPO against

Willmon, effective for thirty-one days, and which prohibited Plaintiff from going to or within

150 feet of the residence Harbin and Willmon occupied.

Defendants first argue that the procedure employed is consistent with Texas law.[11]

Although such a procedure may comply with Texas statutory authority, a statute cannot

contravene constitutionally mandated due process protections. *See Cleveland Bd. of Educ. v.*

*Loudermill*, 470 U.S. 532, 542 (1985). Due process requires notice and an opportunity to be

heard before a person may, through legal action, be deprived of life, liberty, or property. *See*

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950); *United States v. Falzone*,

---

[10]Additionally, Plaintiff claims that the City violated his constitutional right to be free from the separation of his wife without due process. The City did not address whether this is the type of deprivation that demands procedural due process protections, and whether the hearing provided by the City comported with any required due process protections. The Court **GRANTS LEAVE** for the City to present evidence and argument as to this claim.

[11]Defendants note that (1) Judge Lopez-Beaver is a magistrate, Tex. Code Crim. Proc. Ann. art. 2.09 (Vernon 2005); (2) magistrates may issue an order for emergency protection on the Court's own motion or at the request of the victim of the offense, Tex. Code Crim. Proc. Ann. art. 17.292(a) (Vernon 2005); (3) through an EPO, a magistrate may prohibit the arrested party from going to or near the residence of the person protected under the order, Tex. Code Crim. Proc. Ann. art. 17.292(c)(3)(A) (Vernon 2005); and (4) the victim of the offense need not be present in court when the EPO is issued, Tex. Code Crim. Proc. Ann. art. 17.292(d).

3:97-CR-142 (EBB), 1998 U.S. Dist. LEXIS 22409, at *4-5 (D. Conn. June 2, 1998). "[A person's] right to maintain control over his home, and to be free from governmental interference, is a private interest of historic and continuing importance." *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 54-55 (1993). The EPO unquestionably denied Plaintiff of the right to "unrestricted use and enjoyment" of his property, triggering due process protections. *See id.* at 55; *Blazel v. Walsh*, 698 F. Supp. 756, 762 (E.D. Wis. 1988) ("First, by requiring that the alleged abuser avoid the petitioner's residence, in which the respondent may well have a cognizable property interest, the statute threatens a deprivation of property which triggers due process protections.")

Although due process requires proper procedures, it is not the kind of "technical conception with a fixed content unrelated to time, place and circumstances". *See Mathews v. Eldridge*, 424 U.S. 319, 334 (1976).

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* Due process often requires "some kind of hearing" prior to government deprivation of life, liberty, or property. *See Roth*, 408 U.S. at 569-70; *but see Loudermill*, 470 U.S. at 542 n.7 (recognizing that "[t]here are . . . some situations in which a postdeprivation hearing will satisfy due process requirements".). However, the "formality and procedural requisites for the hearing can vary, depending on the importance of the interests involved and the nature of the subsequent proceedings." *Loudermill*, 470 U.S. at 545. Furthermore, "it is well established that, even where

the sanction is patently criminal, unless an action violates a specific provision of the

Constitution, the due process clause requires only the most basic procedural safeguards." *Crowe*

*v. Smith*, 151 F.3d 217, 231 (5th Cir. 1998).

An examination of the *Eldridge* factors informs the Court's analysis. The private interest

affected is Willmon's right to unrestricted use and enjoyment of his home. Clearly, this interest is

substantial and important. *See James Daniel Good*, 510 U.S. at 54-55; *Geisinger v. Voss*, 352 F.

Supp. 104, 109 (E.D. Wis. 1972) ("[T]here would be little room to argue that temporary

deprivation of one's home is not a deprivation of an interest encompassed within the Fourteenth

Amendment's procedural due process protection"); *cf. United States v. All Appurtenances &*

*Improvements Located at 1604 Oceola, Wichita Falls, Texas*, 803 F. Supp. 1194, 1197 (N.D.

Tex. 1992). The primary governmental interest is the instantaneous protection of a purported

domestic violence victim, also recognized as legitimate and important. *See United States v.*

*Calor*, 340 F.3d 428, 431 (6th Cir. 2003); *Henderson v. City of Simi Valley*, 305 F.3d 1052, 1057

(9th Cir. 2002); *Williams v. City of Montgomery*, 48 F. Supp. 2d 1317, 1330 (M.D. Ala. 1999).

There is no doubt that, in appropriate situations, "the necessity of quick action by the State" can

justify the immediate seizure of property without *any* pre-deprivation hearing. *See Parratt v.*

*Taylor*, 451 U.S. 527, 539 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S.

327, 330 (1986) (citing *Fahey v. Malonee*, 332 U.S. 245 (1947); *N. Am. Cold Storage Co. v.*

*Chicago*, 211 U.S. 306 (1908)); *see also Blazel*, 698 F. Supp. at 763 (domestic violence). Even

when such pre-deprivation hearings are not necessary, due process protections are still required at

an appropriate time. *See Blazel*, 698 F. Supp. at 762 (citing *Fuentes v. Shevin*, 407 U.S. 67, 86

(1972)).

-12-

The *Blazel* court conducted an exhaustive analysis of what procedural due process

procedures are required when an *ex parte* protective order in a domestic violence dispute is being

considered, specifically discussing whether notice is required:

> [I]t is apparent that substantial procedural protections are mandated by the strength of the respondent's interest in his home and family and the evident risk of erroneous deprivation when mere allegations in a verified petition may be the basis for an *ex parte* temporary restraining order. However, the strength of the petitioner's countervailing interest in her home and family, the government's interest in preventing abuse, and the possibility that prior notice may incite domestic violence, suggest that those protections should not extend to prior notice.

*Blazel*, 698 F. Supp. at 763. This Court agrees, specifically noting the possibility that prior notice

may incite additional acts of domestic violence.

The *Blazel* court also considered what other procedural safeguards are required:

> I can conclude that . . . the due process clause requires either a pre-deprivation hearing or at least four minimum procedural safeguards: participation by a judicial officer; a prompt post-deprivation hearing; verified petitions or affidavits containing detailed allegations based on personal knowledge; and risk of immediate and irreparable harm.

*Id.* at 763-64. Here, neither the City nor the Plaintiff alleges any kind of post-deprivation hearing.

Instead, the City argues in its Motion that the pre-deprivation hearing before Judge Lopez-Beaver

satisfies the requirements of the due process clause. While this is consistent with *Blazel*, that

court did not opine on what type of pre-deprivation hearing is necessary to comport with due

process, especially in the scenario where there is no evidence of a post-deprivation hearing.[12] *See*

---

[12]At trial, the City may prevail by producing evidence of adequate post-deprivation procedure. *See Eguia v. Tompkins*, 756 F.2d 1130, 1140 (5th Cir. 1985) (finding that a post-deprivation hearing "remedied whatever infirmities may have been present in the process previously afforded [the plaintiff], for the procedures under which it was conducted undoubtedly met due process standards"). The Court notes that the applicable Texas statute specifically provides for a post-deprivation hearing, although there is no evidence of such a hearing in this

*Goldberg v. Kelly*, 397 U.S. 254, 267 (1970) ("The hearing must be at a meaningful time and in a meaningful manner.").

In *Cuellar v. Texas Employment Commission*, a Fifth Circuit panel considered a district court's granting of a motion to dismiss a § 1983 claim based on the due process clause with respect to a denial of unemployment benefits. 825 F.2d 930 (5th Cir. 1987). The *Cuellar* panel noted that *Goldberg* required that a welfare recipient have timely and adequate notice detailing the reasons for a proposed termination, and an "*effective opportunity to defend by confronting any adverse witnesses*" and by presenting his own arguments and evidence orally. *Cuellar*, 825 F.2d at 935 (emphasis in original) (citing *Goldberg*, 397 U.S. at 267-68). "Confrontation is especially important . . . when a credibility dispute rests upon the testimony of individuals . . . who, in fact, might be perjurers." *Id.* (citing *Greene v. McElroy*, 360 U.S. 474, 496 (1959)). The only question before the *Cuellar* panel was "whether and under what circumstances cross-examination of adverse affiants is required at a disqualification hearing, once provided by the State, before an unemployment benefit referee". *Id.* at 936. The critical issue, in the panel's view, was "whether the plaintiff is afforded a viable opportunity to confront the witnesses against him . . . or has been denied the opportunity to cross-examine such witnesses." *Id.* at 938. "In the case of affidavit testimony, this depends critically upon the nature of the hearing, upon notice that the claimant has of the witnesses and their testimony, and upon the opportunities for obtaining and availability of witnesses." *Id.* The panel held that Cuellar might be able to prove a due process violation, and reversed the district court. *Id.* at 939. The panel instructed that on remand the district court "may be required to determine . . . in such a hearing, that a claimant possess a

_____

case. *See* Tex. Code Crim. Proc. Ann. art. 17.292(j).

-14-

confrontation right when provided with inadequate notice of the adverse affiant's testimony, or that a claimant possesses none or all of these rights." *Id.*

Without determining whether *Cuellar* and *Goldberg* strictly apply to this situation, the Court turns to the hearing at issue. *Cf. United States v. White*, 429 F. Supp. 1245, 1251 (N.D. Miss. 1977) ("[C]ontinued use and enjoyment of a home . . . is at least as important an interest as the welfare benefits discussed in *Goldberg*.") The City presented evidence of some sort of informal hearing, without providing evidence of whether Willmon had an opportunity to hear evidence, respond to the proposed EPO, tell his side of the story, introduce evidence, subpoena witnesses, or cross-examine adverse witnesses or affiants. Additionally, the City did not argue what procedural protections are required by the due process clause, based on apposite case law, instead presuming that conformance with Texas statutes would pass constitutional muster. The Court declines to rule on the City's Motion for Summary Judgment as to this point without such evidence and argument.

The Court **GRANTS LEAVE** for the City to present evidence of the procedure at the pre-deprivation hearing, and the procedure at the post-deprivation hearing, if any. The City may also file a brief addressing how the procedure provided by the City comported with the procedural protections required by the due process clause.

III. Official Immunity

Officers Daniel and Wilson claim they are entitled to official immunity from Plaintiff's

-15-

state law claims.[13] Government employees are entitled to official immunity from claims of nonconstitutional torts arising from the good faith performance of their discretionary duties, so long as they are acting within the scope of their authority. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994). Plaintiff's tort claims against Daniel and Wilson all arise from their actions in the performance of their discretionary duties, and Daniel and Wilson have provided evidence that those actions were within the scope of their authority, and made in good faith. Plaintiff did not address these claims in his Response nor submit evidence to the contrary. The Court finds that Daniel and Wilson are entitled to official immunity, and **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's state law claims.

IV. Leave to Amend

The Court **GRANTS LEAVE** for Defendants to file a brief of no longer than twenty-five pages addressing Plaintiff's employment claim against Daniel and Wilson, and Plaintiff's eviction claim, separation claim, and employment claim against the City. Defendants must file any such brief and supporting evidence within thirty days of the date of this Order. Willmon may file additional evidence and a responsive brief of no longer than twenty-five pages within thirty days of the filing of the City's brief limited to those issues. Defendant may file a reply brief of no longer than twenty-five pages within fifteen days of the filing of Willmon's responsive brief.

---

[13]Willmon's state law claims include a claim of assault and battery, a claim of false arrest and illegal imprisonment, and a claim of illegal search/trespass and illegal eviction.

CONCLUSION

The Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's state law claims; Plaintiff's § 1983 claim against Wilson and Daniel premised on wrongful arrest, eviction, and separation; and Plaintiff's § 1983 claim against the City premised on wrongful arrest. The Court otherwise declines to rule on the Motion.

The Court **GRANTS LEAVE** for Defendants to file a brief of no longer than twenty-five pages addressing Plaintiff's employment claim against Daniel and Wilson, and Plaintiff's eviction claim, separation claim, and employment claim against the City. Defendants must file any such brief and supporting evidence within thirty days of the date of this Order. Willmon may file additional evidence and a responsive brief of no longer than twenty-five pages within thirty days of the filing of the City's brief. Defendant may file a reply brief of no longer than twenty-five pages within fifteen days of the filing of Willmon's responsive brief.

**SO ORDERED.**

June 19, 2006.

BARBARA M.G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS

-17-