IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| TROY WILLMON, § | |
| § | |
| Plaintiff, § | No. 3:05-CV-1391-M |
| § | |
| v. § | |
| § | |
| ROBERT DANIEL, RICKY WILSON, and § | |
| CITY OF WAXAHACHIE, TEXAS, § | |
| § | |
| Defendants. § | |

## MEMORANDUM OPINION AND ORDER

In a Memorandum Opinion and Order of June 19, 2006, this Court granted Defendants' Motion for Summary Judgment in part, and reserved judgment as to several issues pending supplemental briefing. Now before the Court is Defendants' Supplemental Brief which addresses the reserved issues: (1) whether summary judgment is warranted against Plaintiff Troy Willmon's 42 U.S.C. § 1983 claim that Defendants deprived him of a property interest in continued government employment, and (2) whether summary judgment is warranted against Willmon's § 1983 claim that the City of Waxahachie ("City") effectively evicted him from his home and separated him from his wife without due process. The Court concludes that summary judgment is warranted against both claims and accordingly **GRANTS** the reserved portion of Defendants' Motion for Summary Judgment.

### BACKGROUND

Plaintiff Troy Willmon was a licensed law enforcement officer working for Ellis County at all times relevant to this suit. On the evening of November 22, 2003, his wife, Candace Harbin, placed an emergency phone call regarding an altercation between herself and her

husband. Sergeant Ricky Wilson and Officer Robert Daniel, employees of the City, responded to the call shortly after 8:00 p.m. Wilson and Daniel arrested Willmon and filed charges for "Assault by Contact—Family Violence." Willmon spent a night in jail and appeared the next day, at approximately 1:00 p.m., before a Municipal Judge,[1] who advised him that "an Order of Emergency Protection was being issued against him." The Municipal Judge "fully explained the Order of Emergency Protection and that it prohibited [Willmon] from going to or within 150 feet of victim Candace Harbin's home or place of employment for thirty-one (31) days." The Municipal Judge asked Willmon if he had any questions. "After allowing [Willmon] the opportunity to ask questions and be heard, [Willmon] signed the Order for Emergency Protection acknowledging receipt thereof."

On July 13, 2005, Willmon filed this lawsuit, asserting a number of claims largely dismissed by the Court in its previous Memorandum Opinion and Order. Based on the supplemental briefing, only two issues remain for the Court to determine: whether there is a genuine issue of material fact as to (1) whether Willmon had a property interest in continued employment as an Ellis County law enforcement officer, and (2) whether the process Willmon received before issuance of the Order of Emergency Protection was constitutionally adequate. The Court addresses each issue in turn.

## ANALYSIS

### A. Employment Claim

Willmon claims that Defendants deprived him of continued government employment

---

[1] The Municipal Judge was acting as a Magistrate at all relevant times pursuant to article 2.09 of the Texas Code of Criminal Procedure.

without due process while facing the allegedly unwarranted charges levied against him.  It is beyond doubt that certain public employees enjoy a property interest in their continued employment, the deprivation of which is subject to the strictures of due process.  *See Muncy v. City of Dallas*, 335 F.3d 394, 398 (5th Cir. 2003).  "However, a property interest is not incidental to public employment, instead it must be created by an independent source, such as state law." *Id.*  Defendants argue that Willmon did not possess a property interest in continued employment and that, therefore, his § 1983 claim must fail.  Willmon, now appearing pro se, does not respond.  After carefully reviewing the City's position, the Court agrees with the City.

Employment in Texas is presumptively at-will: "absent a specific agreement to the contrary, employment may be terminated by the employer or the employee at will, for good cause, bad cause, or no cause at all."  *Montgomery County Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex. 1998).  Therefore, there is no property interest in continued government employment in Texas unless the at-will relationship is "altered by contract or by express rules or policies limiting the conditions under which an employee may be terminated." *Muncy*, 335 F.3d at 398 (citations omitted); *see also Schultea v. Wood*, 27 F.3d 1112, 1116 (5th Cir. 1994).

Defendants' evidence indicates that Willmon's employment was at-will.  The Human Resources Director for Ellis County confirms that "[p]ursuant to Ellis County Personnel Policy attached hereto, all Ellis County employees are at-will employees," and that Willmon was such an employee.  Sections 1.05 and 14.05 of the Ellis County Personnel Policy confirm her statement.  Section 1.05 provides, in relevant part, that Ellis County "shall retain the right to terminate the employment of any individual at any time, for any reason, with or without notice." Section 14.05 provides that "Ellis County employees are employees at will and may be

terminated at any time." Willmon did not respond to Defendants' supplemental briefing, and no prior pleadings contain any argument or evidence that contradicts or raises a material issue of fact with respect to Defendants' claims regarding Willmon's at-will employment. Thus, the Court finds that there is no genuine issue of fact that Willmon was an at will employee. Accordingly, as a matter of law, he had no property interest in continued employment with Ellis County. The Court **GRANTS** summary judgment with respect to Willmon's employment claims, which are hereby **DISMISSED WITH PREJUDICE**.

*B. Eviction and Separation Claims*

Willmon claims that the Order of Emergency Protection ("OEP") infringed his property interest in freedom from eviction from his home and from separation from his wife, and that it was issued without constitutionally adequate process. Specifically, he avers that the hearing conducted prior to issuance of the OEP was held without sufficient notice or opportunity to be heard. The Court previously held, in the Memorandum Opinion and Order of June 19, 2006, that the OEP implicated Willmon's right to the unrestricted use and enjoyment of his home, and the City concedes in its supplemental briefing that it also implicated Willmon's marital liberty interest. *See United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53–54 (1993) (a person's "right to maintain control over his home, and to be free from governmental interference, is a private interest of historic and continuing importance"); *Drummond v. Fulton County Dep't of Family & Children's Servs.*, 547 F.2d 835, 851–52 (5th Cir. 1977) ("Marriage is one of the 'basic civil rights of man,' fundamental to our very existence and survival."). Willmon was therefore entitled to some form of process prior to the deprivation of these property interests. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). "It is firmly established . . . that due process requires notice of the reasons for a proposed deprivation and some opportunity to respond to the substance of the allegations before a final deprivation occurs." *Eguia v. Tompkins*, 756 F.2d 1130, 1139 (5th Cir. 1985). Due process is not, however, "a technical conception with a fixed content unrelated to time, place and circumstances." *Eldridge*, 424 U.S. at 334 (quoting *Cafeteria & Rest. Workers Union v. McElroy*, 367 U.S. 886, 895 (1961)) (internal quotation marks omitted). Rather, the process required turns on the consideration of three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Eldridge*, 424 U.S. at 335. Though there are "extraordinary situations" in which the opportunity to be heard may be postponed until after deprivation of the property or liberty interest at issue, due process typically involves a pre-deprivation hearing. *Eguia*, 756 F.2d at 1139; *see also James Daniel Good Real Prop.*, 510 U.S. at 53 ("The right to prior notice and a hearing is central to the Constitution's command of due process."). Here, the City does not contend that a post-deprivation hearing was used; rather, it argues that the pre-deprivation hearing furnished to Willmon satisfied the requirements of due process. The Court analyzes the City's claim under the *Eldridge* framework.

The first *Eldridge* factor focuses on the property interests of Willmon at issue. As indicated above, the Court previously found that the OEP implicated Willmon's freedom to use

and enjoy his home, and the City concedes implication of his marital interest. Additionally, the Court finds that the property interest in one's home, and the freedom to use and enjoy it, is of "historic and continuing importance," and weighs heavily in the *Eldridge* balance. *James Daniel Good Real Prop.*, 510 U.S. at 53–54.

The second *Eldridge* factor centers on "the risk of an erroneous deprivation of such interest[s] through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Eldridge*, 424 U.S. at 335. Neither party specifically addresses this factor, although the City avers that the notice and opportunity to be heard given to Willmon adequately safeguarded his constitutional interests.

The Court notes that the Municipal Judge who presided over Willmon's pre-deprivation hearing advised Willmon that an OEP was being issued against him. Further, she explained to Willmon the OEP and the limitations it imposed upon him. After being given an opportunity to be heard and ask questions, Willmon signed the OEP without protest.

With these facts in mind, the Court considers the City's claim that the process accorded to Willmon was sufficient to prevent an erroneous deprivation of his liberty interests. The Court concludes that Willmon was provided sufficient notice and an opportunity to be heard. He had the benefit of a hearing before a municipal judge, at which he was allowed to participate and be heard after having the proposed deprivation fully explained to him. *See generally United States v. Falzone*, No. 3:97-CR-142, 1998 WL 351471, at *2 (D. Conn. June 2, 1998) ("courts have clearly stated that due process is not vitiated if a person fails to take advantage of an existing opportunity to participate"). The Court notes that routinely in domestic violence cases, *ex parte* short term temporary restraining orders are issued, followed by a timely post-deprivation

hearing. *See Blazel v. Bradley*, 698 F. Supp. 756, 760 (W.D. Wis. 1988) (noting that thirty-seven states provide for the *ex parte* issuance of temporary restraining orders in domestic violence situations). This does not alter the Court's conclusion that Willmon received constitutionally adequate process.

Consideration of the third *Eldridge* factor confirms the Court's conclusion. The City's interest in forcefully and effectively combating domestic violence is undoubtedly strong; so much so that the haste required to satisfy it has justified the *ex parte* issuance of temporary restraining orders. *See Blazel*, 698 F. Supp. at 757; *Schramek v. Bohren*, 429 N.W.2d 501, 505–06 (Wis. Ct. App. 1988); *Nollet v. Justices of the Trial Court*, 83 F. Supp. 2d 204, 213–14 (D. Mass. Jan. 27, 2000). Where the government's interest is significant enough to justify the *ex parte* issuance of temporary restraining orders that effectively deprive constitutional property interests without any process for a short period of time, the Court is compelled to find that the pre-deprivation hearing in this case satisfied the requirements of due process. Accordingly, Defendant's Motion for Summary Judgment is **GRANTED** as to Willmon's due process claim.

## CONCLUSION

Defendants' Motion is **GRANTED** as to all reserved issues. Therefore, all of Willmon's remaining claims are **DISMISSED**.

**SO ORDERED**.

February 20, 2007.

_____
**BARBARA M. G. LYNN**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**